**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| MCKESSON MEDICAL-SURGICAL MINNESOTA SUPPLY INC.,<br><br>Plaintiff,<br><br>v.<br><br>ADVANCED BIOMEDICAL SOLUTIONS LLC and NATORI PERDUE,<br><br>Defendants. | Case No. 26-cv-1526 |

**COMPLAINT**

COMES NOW Plaintiff McKesson Medical-Surgical Minnesota Supply Inc. ("Plaintiff"), by and through its undersigned counsel, and for its Complaint against Defendants Advanced Biomedical Solutions LLC ("Customer") and Natori Perdue ("Guarantor"), states as follows:

**THE PARTIES**

1. Plaintiff is Minnesota corporation with its registered office address at 2780 Snelling Avenue N, Suite 101, Roseville, MN 55113; and its principal executive office address at 6555 State Highway 161, Irving, TX 75039; and address on invoices as 954 Mayland Drive, Ste. 5176A, Henrico, VA 23233.

2. Customer is a Missouri limited liability company with its registered office at 903 S Lindbergh Blvd, Ste 200, Saint Louis, MO 63131.

3. Guarantor is an individual who, upon information and belief, resides in Madison County, Illinois.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 by virtue of complete diversity of citizenship and because the amount in controversy exceeds $75,000, exclusive of interests and costs.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because Customer resides in this district and a substantial part of the events or omissions giving rise to the claim occurred in this district.

## BACKGROUND

6. McKesson Corporation is one of the largest medical suppliers in the country and Plaintiff is an affiliate of McKesson Corporation. At all relevant times, McKesson Corporation and Plaintiff have authorized the other to act in each other's name to recover these debts.

7. Customer is a retailer of medical supplies, with particular emphasis on home healthcare products.

8. McKesson Corporation and its affiliated companies (including Plaintiff) (collectively referred to as "McKesson"), on the one side, and Customer, on the other, entered into that certain "Customer Application" dated April 23, 2024, wherein Plaintiff agreed to sell certain medical supplies to Customer at a discounted rate in exchange for Customer's agreement to pay for any medical supplies purchased on its account.

9. In the Customer Application, Customer agreed "to abide by (I) standard terms of sale provided or made available by McKesson and/or shown on McKesson's invoices or statements and (II) any written agreement or terms of sale with McKesson governing Customer's account." (Ex. A, 1). Together, the Customer Application and the terms that governed Customer's purchases are referred to herein as the "Agreement." A true and accurate copy of the Agreement is attached hereto and incorporated herein by reference as Exhibit A.

10. In the Agreement, Customer agreed "to pay for all purchases, fees and other charges incurred by Customer or an authorized user on any account of Customer, including service charges on past due amounts at the highest rate permitted by law (including purchases shipped and/or billed to a third-party agent on behalf of Customer)" and "to pay for all purchases, services, fees and other charges incurred by Customer, any employee or other agent (whether acting under authority of the Customer or otherwise) on any account of Customer, including service charges on past due amounts at the highest rate permitted by law (including purchases shipped and/or billed or services provided to a third-party agent on behalf of Customer)." (Ex. A, 1).

11. Pursuant to the Agreement, and to secure Customer's obligations to Plaintiff, Customer granted a security interest to Plaintiff "in all of Customer's right, title and interest in and to its personal property, whether now owned or hereafter acquired, including, without limitation, all Accounts, Cash, Chattel Paper, Deposit Accounts, Documents, Equipment, General Intangibles, Goods, Health Care Insurance Receivables, Instruments, Inventory, Investment Property, Letter-of-Credit Rights and promissory notes, together with all attachments, replacements, substitutions, additions and accessions, and all Proceeds and products thereof and all books and records relating to any of the foregoing" (collectively, the "Collateral"). (Ex. A, 2, 5 at § 10).

12. Customer's orders under the Agreement were sourced and invoiced by Plaintiff.

13. All invoiced amounts were due within thirty (30) days of the date of invoice, unless otherwise stated on the invoice. (Ex. A, 3).

14. Under the Agreement, past due balances are subject to service or finance charges at the highest rate permitted by law, or one and one-half percent (1.5%) per month, whichever is higher. (Ex. A, 3).

15. The Terms of Sale provide that they will be governed by and construed in accordance with the laws of the Commonwealth of Virginia. (Ex. A, 8 at § 24).

**COUNT I**
**BREACH OF CONTRACT**

16. Plaintiff incorporates by reference all the other allegations contained in this Complaint.

17. Customer made numerous orders for medical supplies under the Agreement, which medical supplies were delivered to Customer.

18. Customer has defaulted on, among other obligations, its payment obligations due and owing under the Agreement and related invoices (the "Invoices") by failing to make timely payments to Plaintiff pursuant to the Agreement and Invoices.

19. On or about May 13, 2026, McKesson Corporation, on behalf of Plaintiff, made demand upon Customer for the $317,485.89 then due and owing to Plaintiff. A true and accurate copy of the May 13, 2026 letter is attached hereto and incorporated herein by reference as Exhibit B.

20. Despite said demand, Customer has failed and refused and continues to fail and refuse to pay the outstanding amounts due and owing to Plaintiff under the Agreement and Invoices.

21. Customer has materially breached the Agreement and Invoices by, among other things, failing and refusing to make payment to Plaintiff as required by the Agreement and Invoices.

22. Plaintiff has fulfilled all of its obligations under the Agreement and Invoices by, among other things, delivering goods ordered pursuant to the Agreement and Invoices.

23. Under the Agreement, past due balances are subject to service or finance charges (e.g., late fees) at the highest rate permitted by law, or one and one-half precent (1.5%) per month, whichever is higher. (Ex. A, 3).

24. Under Virginia law, Plaintiff is entitled to 6% in prejudgment interest running from October 2, 2025 to present.

25. Under the Agreement, as a result of Customer's default and breach of the Agreement and failure to pay the Invoices, the entire balance of remaining payments under the Agreement and Invoices are immediately due and payable, which is not less than $324,301.37, which includes $303,074.10 in principal and $21,227.27 in service/finance charges authorized by the Agreement, as of as of June 30, 2026.

26. Under the Agreement, Customer also agreed to pay all reasonable attorneys' fees and expenses or costs incurred by Plaintiff in enforcing its rights to collect amounts due from Customer. (Ex. A, 2, 4 at § 1.7).

WHEREFORE, Plaintiff prays that the Court enter judgment in its favor and against Customer in the amount of $324,301.37 plus (a) any additional amounts that have come due and that continue to come due under the Agreement and Invoices after June 30, 2026; (b) pre- and post-judgment interest accruing at highest rate allowable by law; (c) attorneys' fees and costs of collection, and (d) such other and further relief as the Court deems just and proper.

## COUNT II
## ACTION ON ACCOUNT

27. Plaintiff re-alleges and incorporates herein by reference each of the allegations contained above as if fully set forth herein.

28. Plaintiff agreed to sell, and Customer agreed to pay Plaintiff for, the supplies ordered on Customer's account pursuant to the Agreement.

29. As evidence of this agreement, Plaintiff sent the Agreement and the Invoices to Customer.

30. Plaintiff delivered the supplies ordered by Customer, as set forth in the Invoices, which supplies were accepted by Customer.

31. Customer has failed to pay the amounts due and owing under the Agreement and Invoices for the supplies delivered by Plaintiff and accepted by Customer.

32. Customer's unpaid Invoices and charges currently total not less than $324,301.37 as of June 30, 2026.

33. The amounts charged to Customer are fair and reasonable.

WHEREFORE, Plaintiff prays that the Court enter judgment in its favor and against Customer in the amount of $324,301.37 plus (a) any additional amounts that have come due and that continue to come due under the Agreement and Invoices after June 30, 2026; (b) pre-judgment interest accruing at highest rate allowable by law; (c) post-judgment interest; (d) attorneys' fees and costs of collection, and (e) such other and further relief as the Court deems just and proper.

## COUNT III
## ACTION ON GUARANTY

34. Plaintiff re-alleges and incorporates herein by reference each of the allegations contained above as if fully set forth herein.

35. On or about April 23, 2024, for good and valuable consideration, including, but not limited to, Plaintiff's promise to sell goods to Customer at discounted prices, Guarantor executed a Guaranty (the "Guaranty") whereby Guarantor guaranteed Customer's obligations under the Agreement and Invoices, including, but not limited to, Customer's payment obligations. (Ex. A, 2).

36. Guarantor executed the Guaranty and irrevocably and unconditionally delivered the Guaranty to Plaintiff.

37. Plaintiff relied on the Guaranty when it entered into the Agreement.

38. Customer has defaulted under the Agreement and Invoices, as set forth in Count I and Count II, above.

39. In the Guaranty, Guarantor agreed, among other things, that Guarantor:

> jointly and severally guarantees to McKesson Corporation and its affiliates (collectively referred to as "McKesson") that Customer will fully and promptly perform and pay all its present and future obligations to McKesson, whether direct or indirect, joint or several, absolute or contingent, secured or unsecured, matured or unmatured, and whether originally contracted with McKesson or otherwise acquired by McKesson. This guaranty applies to all of Customer's obligations to McKesson, even if such obligations are invalid or unenforceable against Customer for any reason and even if any security for such obligations is insufficient, invalid, unenforceable or not perfected. This guaranty is an absolute and unconditional guaranty of payment. It is a continuing guaranty and covers any future extensions of credit by McKesson to Customer. This guaranty is a guaranty of payment when due and not merely of collectability after judgment or other action against Customer.

(Ex. A, 2).

40. On or about May 13, 2026, McKesson Corporation, on behalf of Plaintiff, made demand upon Guarantor for the $317,485.89 then due and owing to Plaintiff. A true and accurate copy of the May 13, 2026 letter is included in <u>Exhibit B</u>.

41. Despite said demand, Guarantor has failed and refused and continues to fail and refuse to pay the outstanding amounts due and owing to Plaintiff.

WHEREFORE, Plaintiff prays that the Court enter judgment against Guarantor in the amount of any judgment entered against Customer on Count I and/or Count II, above, plus (a) post-judgment interest, (b) attorneys' fees and costs of collection, and (c) such other and further relief as the Court deems just and proper

Dated: September 25, 2026

Respectfully Submitted,

**LEWIS RICE LLC**

By: /s/ Skylar S. Petitt________
Jacqueline K. Graves, #64875(MO)
Skylar S. Petitt, #74789(MO)
600 Washington Ave. Suite 2500
St. Louis, Missouri, 63105
Telephone: 314-444-7600
Fax: 314-612-7675
jgraves@lewisrice.com
spetitt@lewsirice.com

*Attorneys for Plaintiff*